40 So.2d 439

### TAXPAYERS AND CITIZENS OF CITY OF FORT PAYNE v. CITY OF FORT PAYNE et al.

7 Div. 982.

Supreme Court of Alabama.

April 14, 1949.

Rehearing Withdrawn May 17, 1949.

232

Wm. Alfred Rose, Ellene Winn and White, Bradley, Arant & All, all of Birmingham, for appellees.

Chas. J. Scott, J. A. Johnson and W. M. Beck, all of Fort Payne, for appellants.

LIVINGSTON, Justice.

Pursuant to sections 169 to 176, inclusive, of Title 7, Code of 1940, the City of Fort Payne, Alabama (for convenience herein called the city), and its governing body brought this validation suit against the citizens and taxpayers of the city for the purpose of validating $118,000 principal amount of general obligation street im-

provement warrants of the city to be dated May 1, 1948, and $125,000 principal amount of general obligation street improvement warrants of the city to be dated June 1, 1948.

The bill or petition contains allegations setting forth the terms and provisions of the resolutions authorizing said warrants, including provisions (1) that said warrants were to be issued to provide funds for the completion of certain street improvements; (2) that the indebtedness evidenced and ordered paid by said warrants shall be a general obligation of the city; and (3) that as additional security for said warrants there was further pledged all assessments that might thereafter be made against the properties abutting said street improvements.

It was alleged in the amended petition that "at the present time the population of the city is in excess of six thousand inhabitants." A statement as to the assessed valuation of the property in the city and a schedule of the outstanding indebtedness of the city were attached to the petition as exhibit "A".

By demurrer, the appellants raised the question that the issuance of the proposed warrants would create an indebtedness in excess of that allowed by section 225 of the 1901 Constitution of Alabama. The demurrer invited the court to take judicial notice of a municipal census of said city, certified to the Secretary of the State of Alabama by the mayor of the city on October 31, 1946, in accordance with sections 481 to 484, inclusive, Title 37, Code of 1940, in which census the population of Fort Payne was shown to be five thousand two hundred and three. The lower court overruled the demurrer, hence this appeal.

It appears that the proposed warrants would create an indebtedness in excess of the city's constitutional debt limit, as provided in section 225 of the Constitution, if the population is less than six thousand, but not if the city's population is more than six thousand.

The only issue presented therefore is whether the population of the city at the time of filing the petition must be deemed to be that as set forth in the census certified to the Secretary of State on October 31, 1946, or whether the population of the city on the date of the institution of this proceeding shall control, and is a question open for determination and proof.

In Ryan v. Mayor [and Councilmen] of Tuscaloosa, 155 Ala. 479, 46 So. 638, 639, 641, it was held that under section 225, Article 12, Constitution of 1901, it is not required as a condition precedent to the creation of an indebtedness in excess of the amount limited therein, that the decennial federal census shall show a population of six thousand. It is sufficient that the city have a population of six thousand at the time of the creation of the indebtedness. The Court said: "The complainant's insistence, in legal effect, leads to the proposition—to the construction—that the ascertainment of the condition (population) must be by the last federal census. The most casual reading of the section of the organic law demonstrates that the instrument is wholly silent as to the means for the ascertainment of the population of the city or town; and a census, official though it is, is but a means for the ascertainment of the number of persons. Can we, by construction, supply this means? We think not. If so it was ruled, the result would be, not only an unwarranted interpolation of a most material provision into the section, but also to render the section utterly unavailable, possibly for near ten years between decennial federal censuses, to towns and cities having, at the time such census was taken, less than 6,000 population, notwithstanding within a month thereafter the population was greater than 6,000. In short, under the construction urged for complainant, it is easily conceivable that for nine years and more the privilege of the section would be denied to towns and cities having in fact the requisite population at the time the bonds were desired to be issued; but to such a result the makers of the Constitution have, under no interpretation, written."

In the later case of Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 So. 8, 10, this Court, in speaking of previous constructions of section 225, supra, said: "Of these decisions it may be noted that the two classes of municipal corpora-

tions are dealt with and are created by having a population of more or less than 6,000, and that the expression 'having a population' means the population at the time of the creation of the indebtedness, and not that shown by the preceding federal census, Ryan v. Mayor of Tuscaloosa, 155 Ala. 479, 488, 46 So. 638".

■ It is clear enough that the decisions of this Court are to the effect that it is not required as a condition precedent to the creation of an indebtedness in excess of the amount limited in section 225 of the Constitution that the preceding decennial federal census shall show a population of six thousand: that it is sufficient if the city has a population of six thousand at the time of the creation of the indebtedness.

But is is insisted that the legislature by enacting sections 481 to 484, inclusive, Title 37, Code of 1940, which will for convenience be referred to as the municipal census, placed restrictions in addition to those provided by section 225 of the Constitution upon the power of a municipality to incur indebtedness.

■ We do not think that the placing of further restrictions upon the power of a municipality to incur an indebtedness, thereby abridging the powers of municipalities under the Constitution, was ever contemplated by the legislature in enacting the municipal census statutes. The apparent purpose thereof is to provide a procedure for obtaining an official census, with all the advantages of an official census, including a permanent official record of which a court is required to take judicial notice. See, Bradford v. State, 226 Ala. 342, 147 So. 182. This Court has once before, in consideration of the municipal census statutes, declined to interpret those statutes as requiring that a census taken thereunder control for all purposes. In Ex parte Jones, 212 Ala. 259, 102 So. 234, 235, this Court declined to apply the municipal census for purposes of determining population under the general revenue act. It was said therein: "The Municipal Census Act, using the very general words 'shall for all pur-

poses govern' should be construed in the light of the object and purpose of that enactment expressed in part, at least, in the concluding sentence of the first section thereof, to the effect that the form of government of such cities and towns shall be controlled by such census."

■ Construing the municipal census statutes in the light of the object and purpose of their enactment, it is clear that the legislature did not intend to alter or abridge the rights of municipalities to incur indebtedness under section 225 of the Constitution. If, in fact, a municipality actually crosses the six thousand population figure so that it will in fact be one "having a population of six thousand or more," then there is nothing in the municipal census statutes to prevent that municipality from incurring indebtedness as authorized in section 225 of the Constitution for municipalities of that population class.

In Ryan v. Mayor and Councilmen of Tuscaloosa, supra, the Court pointed out that the framers of the Constitution had good reason for not tying to the federal census the rights of a municipality to incur debts. The Court stated it was easily conceivable that for more than nine years the privileges of section 225 might be denied to cities which, in fact, had the requisite population at the time an indebtedness was sought to be created. The same compelling reasons may be applied to the intent of the legislature in enacting the municipal census statutes. Under the construction urged by the appellants, even though a city has an actual population exceeding six thousand it might for a period of five years be prevented from exercising the privileges accorded to it under section 225 of the Constitution.

The municipal census statutes do not, we think, control as to the population of the city at the time the indebtedness was, or is to be, created.

Affirmed.

BROWN, SIMPSON and STAKELY, JJ., concur.